Rouse *v.* Saucier's Heirs.

(Division B. Feb. 27, 1933.)

[146 So. 291. No. 30293.]

Graham & Lindsey, of Gulfport, for appellant.

Broom, Bilbo & Shipman, of Jackson, for appellant.

708

J. K. Saucier, of Gulfport, for appellee.

J. F. Galloway, of Gulfport, amicus curiae.

Argued orally by **W. A. Shipman**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

On July 6, 1795, an order or permit of settlement was issued under the authority of the proper Spanish officer, to Etienne Perache; the permit providing that the settlement area should be twenty arpents front by forty arpents deep on Wolf river near the Bay of St. Louis. Actual settlement was made, and the claim, afterwards officially designated as claim No 21, was transferred to Philip Saucier. When the territory of which the land here in question became, beyond dispute, a part of the United States, recognition was accorded to this claim, as was required by the terms of the treaty with Spain, and in 1824 the claim was surveyed and segregated by Elihu Carver, United States Surveyor, commissioned for that purpose, and subsequently a proper patent was issued for the land thus surveyed, in pursuance of an act of Congress so authorizing. When the survey aforesaid was made, it was found that between the actual settlement, that is to say, between the cultivable land and the perceptible channel of Wolf river, there was a strip of salt water marsh or tide land covered with water at high tide and partly uncovered at low tide. In accordance with the legal rule and usual custom in such a case, the surveyor meandered the line next to the river, so that the meander followed approximately— but in this case somewhat within—the line of ordinary high tide. There was thus left between this meander line

and the channel of the river approximately two hundred acres of tidewater marsh. In 1906 the United States caused an ex parte resurvey to be made of this area, and a new plat to be made, and on April 14, 1912, a homestead entry patent for this so-called land was issued to Alfred Boykin, through whom some of the defendants claim title. On December 23, 1926, the state land commissioner, on the theory that this overflowed land belonged to the state through the Swamp Land Act of Congress of September 28, 1850 (43 U. S. C. A., section 982 et seq.), issued two patents to C. A. and W. B. Lundy through whom the remainder of the defendants claim title. On April 16, 1930, the heirs of Saucier filed their bill to cancel the claims of all the said defendants, and, the bill having been sustained by the chancery court, an appeal has been prosecuted by one of the defendants.

The chancellor delivered an elaborate opinion covering every question in the case. The findings of fact made by him are supported by the evidence. The applicable law so far as necessary to a determination here has been settled by decisions too numerous to cite. It may be that the law governing such cases, which law had its genesis and development in conditions which do not now completely exist, is not at this day entirely satisfactory—this because of the fact that modern machinery and appliances have rendered it possible to make more of these tidewater marshes than in the long ago—but, the law being settled, the courts have only to follow until state and national constitutional changes may otherwise ordain. We therefore simply summarize the case under the following five headings:

(1) Between the high tide meander line and the same line on the opposite side of a navigable tidewater stream, the United States in respect to confirmed land grants had or retained no further right, title, or control except such as is mentioned in the succeeding paragraph.

(2) Upon the admission of the state into the Union, there became invested in the state, as trustee, the title to all the land under tidewater, including the spaces between ordinary high and low water marks; this title of the state being held for public purposes, chief among which purposes is that of commerce and navigation, for which latter purposes the title of the state is subservient to such regulations as may be constitutionally made by the national government, in said matters of navigation and commerce.

(3) Neither the state nor the federal government can validly convey title in fee simple to an area such as above mentioned to private owners for private purposes. To what extent and what title may be conveyed for public purposes, and particularly for the purposes of commerce and navigation and fisheries, is not here before us, and an academic discussion will therefore not be undertaken upon that subject.

(4) The ex parte resurvey by the federal government of the locality and the patent under the homestead entry issued to Alfred Boykin were inoperative and invalid, and likewise the patents issued by the state to the Lundys, so that neither of them nor any of their vendees have any valid interest in the property, and their claims thereto were properly canceled.

(5) Without undertaking to state exactly what right or interest the heirs of Philip Saucier, the original settler and patentee, have in the property as riparian or littoral proprietors, it is enough to say that they had a sufficient interest to enable them to maintain the bill and to cancel the pretended claims of the several defendants. Money v. Wood, 152 Miss. 17, 118 So. 357.

Affirmed.