PARKS, et al. *v.* SIMPSON, et al.

No. 42203          February 5, 1962          137 So. 2d 136

*Vickers, Riis, Murray & Curran,* Mobile, Alabama; *William Joel Blass,* Wiggins, for appellants.

*George R. Smith, R. W. Thompson, Jr.,* Gulfport; *Dan M. Russell,* Bay St. Louis, for appellees.

Lee, P. J.

W. L. Parks and Radcliff Gravel Co., Inc., filed their bill of complaint against W. G. Simpson, and others, comprising the members of the Mississippi Marine Conservation Commission, and Jahncke Service, Inc., to cancel a purported contract between the Commission

and Jahncke, and to enjoin the removal of any materials from the waters of the Mississippi Sound pursuant to such contract.

It was alleged that Parks is a resident citizen and taxpayer of Harrison County; that he filed this action for himself, the general public, and all persons interested; and that he expressly invited such persons to join in the litigation. It was further alleged that, prior to instituting the action, he solicited both the Attorney General of the State and the District Attorney of the Second Judicial District of Mississippi to bring the suit or permit the same to be brought in their names, but that said officers declined to do either. Radcliff Gravel Company is an Alabama corporation, qualified to do business in this state, and is engaged, among other things, in the business of dredging and selling shells.

It was further charged that the defendant Commission, on August 23, 1960, entered into the purported contract with Jahncke Service, Inc., for the sale of shells from the waters of Mississippi Sound. A copy of the contract and supplementary agreements was attached. Under the contract, the Commission granted, bargained and sold to Jahncke oyster shells and shell deposits, meaning the shells of dead oysters and other shellfish, which had accumulated over a long period of time and which were commonly referred to as "dead reef shells", "reef shells", or "cay shells", in the territory known as Mississippi Sound, with rights of ingress and egress for the purpose of mining, dredging, taking and removing the shells. The compensation was twelve cents a cubic yard, with a minimum annual payment of $16,000, thus assuring the collection of revenue from that source of at least that amount annually. This contract was to run for a period of ten years, with certain rights of renewal. At the expiration of the period, Jahncke ceased to have any rights whatever in the shells. It is un-

necessary to refer to other provisions and restrictions in the contract.

The answers of the defendants were separate but of substantially the same effect. They denied that the contract and its supplementary modifications was a nullity. It was averred that Chapter 173, Laws of 1960, constituted a complete revision of the seafood laws of the state; that Section 20 thereof repealed 81 other sections of such laws, and, at the same time, specifically authorized and empowered the Commission to enter into contracts for the sale of, and the right to dredge for and remove, shells from the Mississippi tidewater bottoms, and to make contracts such as are involved in this case; that the seafood industry, giving employment to thousands of persons, and their employment was threatened because of a decline in the efficiency of the industry; that the Legislature declared the public policy in respect to this industry under Section 1 of the Chapter and granted far-reaching powers to the Commission; that it had been the established policy of the state for the Commission, having jurisdiction of its seafoods, to be self-supporting; that, upon investigation, it was found that the revenue available from taxes levied on the industry were inadequate to carry out the duties of the Commission, and that an increase thereof would make it impossible for Mississippi citizens to compete in the national market; that under Subsection (4), Section 6, Chapter 173, Laws of 1960, as one of the powers of the Commission, the Legislature provided: ''For the purpose of growing oysters, may acquire and dispose of shell seed oysters and other materials; * * *''; that the shells in question had accumulated over centuries, and, in some of the banks, they are over 100 feet thick from top to bottom; that in former years, the Seafood Commission had let contracts of this nature, but because of non-performance, the revenue therefrom had been negligible; and that the contract here involved is an

advantageous one because it insured the availability of at least $16,000 each year.

It was furtrer charged that, in Subsection (4), of Section 6, supra, a comma appears to have been omitted, evidently a clerical error, between the words "shell" and "seed", but that, under established rules of statutory construction, a comma should be inserted so as to make the provision read: "For the purpose of growing oysters, may acquire and dispose of shell, seed oysters and other materials; * * *''; that seed oysters are very small, grow in thick beds, and are useless unless removed from the beds and scattered or planted where more food is available; that Subsection (4), unless construed to mean both a sale of shells and seed oysters, would be meaningless because the sale of dead reef shells is the most important source of funds with which to rebuild and revitalize the seafood industry.

Consequently the defendants averred that the court should construe said Subsection (4) and hold that it was the actual purpose and intention of the Legislature that the subsection should provide as follows: "(4) For the purpose of growing oysters, may acquire and dispose of shell, seed oysters and other materials; * * *''; that the Commission was authorized to make sales of shells and shell deposits from the water bottoms in question, and that the contract in question was valid.

Subsequently the complainants moved the court to strike the answers of the defendants on the ground that they were insufficient in law to constitute a defense to the bill.

The motion to strike was overruled. The court recognized that the sole purpose of the motion to strike was to present the question as to whether or not the Commission had the requisite authority in law to enter upon the particular contract here involved. Hence the chancellor granted the complainants an appeal to this Court.

The appellees quote the rule with reference to striking an answer as laid down in Griffith's Mississippi Chancery Practice, Section 367, pp. 351-2, showing that it is "not favored in our practice, and will be allowed only where there is no other available method and when the justice of it is so clear as to be fairly indisputable." They also correctly state that it is in the nature of a demurrer and with like effect. Consequently they argue that, if evidence had been presented, they would have been able to show clearly the ambiguity in Subsection (4), supra. Griffith's Mississippi Chancery Practice, Section 288, pp. 271-2.

The parties agree that the question on this appeal is whether or not under Chapter 173, Laws of 1960, the Commission had authority to sell the dead reef shells, as heretofore described, and thus enter into the contract about which this controversy arose.

The appellants say that these deposits, being property held by the state as trustee for the people, are public property and can be sold only by Legislative authority and in the manner provided by law. Too, since the Legislature expressly repealed Section 25, Chapter 195, Laws of 1958, which gave the old Seafood Commission the power and authority to sell the deposits in accordance with the method there mentioned, and since there is no language in the new Act, Chapter 173, Laws of 1960, which purports to grant such authority as was contained in the 1958 Act, it follows that the Legislature ordained the repeal intentionally and with a purpose. Besides, it is vain to contend that the Legislature in omitting Section 25 of the old Act, and inserting nothing to take its place, in fact made no change in the substance of the law. This is not a correction of a mere clerical error or an inadvertent omission. The Legislature should not be accused of forgetting to insert those three paragraphs. Obviously the courts have no authority to write into the statute something which the

Legislature itself did not intend to write therein. They also say that shell, as used in Subsection (4) of Section 6 of the 1960 Act, when read with the balance of that subsection, means shells taken from the oysters processed in the factories.

On the other hand, the appellees say that the Legislature evinced its purpose and intention of bringing about a revitalization of the seafood law by its declaration of policy in Section 1 of the 1960 Act. State policy had always contemplated that the Commission should be self-supporting. The sale of such deposits was the practical and feasible way to get money for operation. Consequently the Legislature could not have had it in mind to eliminate this source of revenue. There is an ambiguity in the bill. The proper construction necessitates extrinsic aids. There is no such thing, for instance, as "shell seed oysters". Subsection (4) should be construed to the effect that the Commission had authority to sell shells and seed oysters; otherwise the language is meaningless. Consequently a comma should be placed between "shell" and "seed oysters" in order to effect a sensible construction. To show that this Court has corrected ambiguities, they cite Adams v. Y. & M. V. R. Co., 75 Miss. 275, 22 So. 824; Ott v. Lowery, 78 Miss. 487, 29 So. 520; Dukate v. Adams, 101 Miss. 433, 58 So. 475; Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514; Gandy v. Public Service Corporation of Mississippi, 163 Miss. 187, 140 So. 687; Mississippi Cottonseed Products Co. v. Stone, et al., 184 Miss. 409, 184 So. 428; Martin v. State, 190 Miss. 32, 199 So. 98.

This Court, by an unbroken line of decisions over 100 years, has declared that the State "is the owner of the lands in the beds of all its shores, inlets, and adjacent to the islands, over which the tides of the sea ebb and flow, and that it holds title as trustee for the people of the State." Giles v. City of Biloxi, 237 Miss.

65, 112 So. 2d 815; Xidis v. City of Gulfport, 221 Miss. 79, 72 So. 2d 153; Crary v. State Highway Commission, 219 Miss. 284, 68 So. 2d 468; State v. Stewart, 184 Miss. 202, 184 So. 44; Rouse v. Saucier, 166 Miss. 704, 146 So. 291; Money v. Wood, 152 Miss. 17, 118 So. 357; Martin v. O'Brien, 34 Miss. 21.

██ ██ Manifestly the shells, undertaken to be sold under the contract here in question, constitute state property—a part of the land. Section 95 of the Constitution prohibits the donation of land belonging to, or under the control of the state. It also contains this admonition: "Nor shall such land be sold to corporations or associations for a less price than that for which it is subject to sale to individuals." Besides "the granting of lands under the control of the State must be by general law." Giles v. City of Biloxi, supra.

By Section 2, Chapter 195, Laws of 1958, the Legislature recognized that such shells are the property of the State; and, by Section 25 thereof, it was provided as follows:

"Shells are property of state.—All of the shells of dead oysters, clams and other shell fish; and all of the oyster shells, clam shells, mussel shells, and cay shells, being upon the bottoms of, or under the tide waters within the territorial jurisdiction of the State of Mississippi, and all beds, banks and accumulation of such shells within such territorial jurisdiction or upon the beaches or bottoms of such waters, or surrounded by such waters, are hereby declared to be the property of the State of Mississippi, and the title to same shall not be divested except in the manner herein provided.

"The seafood commission of the State of Mississippi shall have and it is hereby granted full authority and control over all of such shells, beds, banks and accumulation of shells and may, in its discretion, sell and dispose of same or of any part thereof, at private or public sale; the proceeds of any such sale or sales to be paid

into the state treasury into the sea food fund to be used for any purpose for which sea food funds are authorized to be expended.

"The commission shall have the authority, in its discretion, to sell such shells, beds, banks or accumulation of shells by the yard or barrel or may grant the right to remove the same upon a contract under which a percentage of the shells so removed will be delivered to the seafood commission to be used in developing public oyster reefs."

By said section, quoted above, it was again declared that such shells are the property of the State and that title thereto could not be divested except in the manner therein provided. It is seen that alternative methods of sale and disposal were set up. The Legislature was evidently aware of the provisions of the Constitution and was making an effort to comply therewith. This section contained 249 words. It was evidently not omitted from Chapter 173, Laws of 1960, by inadvertence or mistake. Actually it was expressly repealed by Section 20 of the 1960 Act. Consequently there must have been a reason and purpose, although the motivation therefor does not appear.

Section 3, Chapter 173, Laws of 1960, provides as follows:

"All sea foods the property of the state, until. All sea foods existing or living in said waters not held in private ownership legally acquired, and *all beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds and inlets bordering on or connecting with the Gulf of Mexico or Mississippi Sound* within said territorial jurisdiction, including *all oysters and other shell fish and parts thereof grown thereon,* either naturally or cultivated, *shall be, continue, and remain the property of the State of Mississippi, to be held in trust for the people thereof until title thereto shall be legally divested in the manner and form hereinafter authorized,*

and the same shall be under the exclusive control of the commission until the right of private ownership shall vest therein as hereinafter provided.'' (Emphasis supplied.)

Thus the Legislature again recognized that such shells are the property of the State and will remain so until title shall be legally divested in the manner and form ''hereinafter authorized''.

In Section 6 of Chapter 173, with reference to jurisdiction, authority and duties of the Commission, it is said:

''* * * In connection with its jurisdiction and authority, the commission:

''* * *

'' (4) For the purpose of growing oysters, may acquire and dispose of shell seed oysters and other materials; provided, however, fifty per cent (50%) of all the oyster shells produced from oysters taken from the public reefs of the State of Mississippi and fifty per cent (50%) of all oyster shells produced from the oysters processed within the State of Mississippi are hereby declared to be the nontransferable property of the State of Mississippi and all persons, firms or corporations dealing in or canning oysters taken from the public reefs of the state and all persons, firms or corporations processing oysters within the state shall deliver to the commission fifty per cent (50%) of the oyster shells taken or processed by said person, firm or corporation, delivery of same shall be at the place of business of the oyster processor, dealer or factory.''

Actually the above Subsection (4) is the only basis on which the appellees claim that they have authority to make such sales.

But it must be borne in mind that, even if a comma is placed between the words ''shell'' and ''seed oysters'', in the above quotation, the shells, which were being referred to in that context, were the oyster shells ''pro-

duced from oysters taken from the public reefs of the state'' and ''oyster shells produced from the oysters produced within the state''. Such shells have no connection whatever with ''dead reef shells'' or ''reef shells'', or ''cay shells'', such as are involved in the present controversy.

Section 11 of the 1960 Act grants authority to the Commission to *lease*, not *sell*, bottoms. This applies to the gathering of seafood for a term of one year and of course has no application to the sale of shells as are under consideration in the present controversy.

▉▉ ▉ The Court has been unable, after a careful check of the 1960 Act to find that the Commission is clothed with authority to make sales of shells of the kind referred to in the contract here under consideration. In United Gas Pipe Line Company v. Mississippi Public Service Commission, Miss., 133 So. 2d 521, the Court had under consideration not whether the State had the power to regulate the kind of sales there involved but whether the Legislature granted to the Commission the power to do so, and it held that such power had not been granted. This is the question now before the Court—not whether the Legislature had the power to authorize this to be done, but whether in fact they actually did so.

After the Legislature omitted Section 25 of the Act of 1958, expressly repealed the section, and did not re-enact another section of like character and effect, it is too late to ask this Court, by a strained and indefensible construction, under the label of inadvertence, clerical error, or some other euphemistic phrase to stultify itself by holding that the Legislature, after all, did, in the first seventeen words of Subsection (4), empower the Commission to sell and dispose of such shells as are involved in this case, and, especially so, when those words are wholly out of context for such a construction. Besides, in addition to the opprobrium which the Court

would heap upon itself, the announcement of such a construction would also erect a permanent monument of Legislative stultification.

It follows that the Commission had no authority to enter upon the contract with Jahncke. Consequently the contract was invalid and of no effect. The cause is therefore reversed and a decree will be entered here invalidating the contract and enjoining its performance.

Reversed and decree here.

*Kyle, Gillespie, McElroy,* and *Jones, JJ.,* concur.